IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **12-cv-3085-AP**

**WILDEARTH GUARDIANS,**
**ALLIANCE FOR THE WILD ROCKIES,**
**BIODIVERSITY CONSERVATION ALLIANCE,**
**CONSREVATION CONGRESS,**
**FRIENDS OF ANIMALS,**
**FRIENDS OF THE CLEARWATER,**
**NATOINAL WOLFWATECHER COALITION,** and
**WESTERN WATERSHEDS PROJECT**

    Petitioners,

v.

**UNITED STATES FISH AND WILDLIFE SERVIVCE**

    Respondent.

ORDER GRANTING MOTION TO TRANSFER

Kane, J.

Because Petitioners could have brought this action in the District of Wyoming and considerations of convenience and the interest of justice weigh in favor of transfer, Respondents' motion is GRANTED.[1]

BACKGROUND

Petitioners WildEarth Guardians, Alliance for the Wild Rockies, Biodiversity Conservation Alliance, Conservation Congress, Friends of Animals, Friends of the Clearwater, National Wolfwatcher Coalition, and Western Watersheds Project challenge the U.S. Fish and Wildlife Service's ("Service") 2012 regulation that removes Endangered Species Act ("ESA")

---

[1] Parties refer to themselves variously as Petitioners/Respondents and as Plaintiffs/Defendants. As this lawsuit challenges administrative rules, I use the Petitioner/Respondent designation.

protections for gray wolves located in the State of Wyoming. *See* Final Rule, 77 Fed. Reg. 55530 (Sept. 10, 2012) ("Wyoming Rule"). The Service issued the Wyoming Rule following previous agency efforts to address the recovered status of the Northern Rocky Mountain ("NRM") gray wolf population that is located in the States of Idaho, Montana, Wyoming, and the eastern portions of Utah, Oregon, and Washington.

Specifically, in 2009, the Service identified a NRM population of gray wolves (inhabiting the states of Idaho, Montana, Wyoming, and portions of Utah, Oregon, and Washington), retained ESA protections for gray wolves located in the State of Wyoming,  and removed ESA protections for (or delisted) the gray wolves located in the remaining NRM states. *See* Final Rule, 74 Fed. Reg. 15123 (Apr. 2, 2009) ("2009 Rule"). This rule was the subject of extensive litigation in the Districts of Montana and Wyoming, where both courts set aside and vacated the Service's 2009 Rule. *See Wyoming v. U.S. Dep't of the Interior*, 09-cv-118-J, 2010 WL 4814950 (D. Wyo. Nov. 18, 2010); *Defenders of Wildlife v. Salazar*, 729 F. Supp. 2d 1207 (D. Mont. 2010), vacated as moot; *Defenders of Wildlife v. Salazar*, No. 10-35885 (Nov. 7, 2012) (Exhibit 1). Congress later intervened and directed the Service to reissue the 2009 Rule. *See* Department of Defense and FullYear Continuing Appropriations Act of 2011, Pub. L. No. 112-10, § 1713, 125 Stat. 38 (2011) ("2011 Appropriations Act").  With the reissuance of the 2009 Rule, wolves throughout the NRM, except in Wyoming, were no longer protected under the ESA.

As noted, the 2009 Rule and the status of Wyoming wolves was litigated in the U.S. District Court for the District of Wyoming.  That court held that the Service's findings were arbitrary and capricious, and it remanded the matter to the Service with specific instructions. *See Wyoming v. U.S. Dep't of Interior,* 2010 WL 4814950, at *45.  Per the remand order, the Service alleges it worked with the State of Wyoming to identify regulatory mechanisms that could

support delisting, reviewed and analyzed the efficacy of State regulatory mechanisms, and addressed the specific remand instructions and issues set forth by the Wyoming District Court. These efforts culminated in the Service's issuance of the Wyoming Rule that addresses and removes ESA protections for wolves located in the State of Wyoming. *See* 77 Fed. Reg. 55530. On November 27, 2012, Petitioners filed the instant lawsuit challenging the Wyoming Rule.

On December 3, 2012, Respondents filed a Motion to Transfer Venue (Doc. 5). On December 10, 2012, the State of Wyoming (the "State") filed an *amicus brief* in support of Respondents' Motion. (Doc. 8.) Respondents and the State contend that, though venue is proper here, this case should be transferred to Wyoming pursuant to 28 U.S.C. § 1404(a), because the case is properly venued in the District of Wyoming and transferring venue would be in the interests of justice and the convenience of the parties and witnesses; I agree.

The instant controversy is fundamentally about wolves located in the State of Wyoming and how the State has chosen to manage one of its resident wildlife species. Plaintiffs' lawsuit therefore implicates substantial State interests, directly impacts the citizens of Wyoming, and raises claims and issues that the Wyoming courts are familiar with and have long adjudicated.

## LEGAL STANDARD

The propriety of venue in this district notwithstanding, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Any party, and even the court *sua sponte*, can move for transfer of an action under § 1404(a). Where, as here, a party moves to transfer a case pursuant to § 1404(a), it bears the burden of establishing that transfer is proper. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991). Respondents must make two showings to justify transfer. First, Respondents must

establish that Petitioners could have originally brought the action in the proposed transferee district, the District of Wyoming. *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964) (superseded by statute on other grounds). Second, Respondents must demonstrate that considerations of convenience and the interest of justice weigh in favor of transfer to that court. *Chrysler Credit Corp.*, 982 F.2d at 1515. Unless the balance of the inconvenience strongly favors the moving party, the plaintiff's choice of forum should rarely be disturbed. *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992).

Although § 1404(a) specifies three factors which must be considered in determining whether to transfer venue, they are "broad generalities that take on a variety of meanings in the context of specific cases." 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3847 (2007); *see also Van Dusen*, 376 U.S. at 622 (The purpose of the statute is "the individualized, case-by-case consideration of convenience and fairness"). "A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). These factors include: (1) the plaintiff's choice of forum; (2) the convenience and location of witnesses and other sources of proof; (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and,(9) all other considerations of a practical nature that make a trial easy, expeditious, and economical. *Chrysler Credit Corp.*, 928 F.2d at 1516 (citing *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)).

ANALYSIS-THE BALANCE OF EQUITIES FAVORS TRANSFER

It is uncontested that venue is proper in the District of Wyoming. (Doc. 10, footnote 4) As such, I turn to the *Chyrsler* factors enumerated above.

A.  *Plaintiffs' Choice Of Forum Is Entitled To Minimal Consideration*

As a general rule, a "plaintiff's choice of forum should rarely be disturbed." *Scheidt*, 956 F.2d at 965. Because Plaintiffs' principal places of business are not located in Colorado and the vast majority of the operative facts took place in Wyoming, however, Plaintiffs' choice of forum is entitled to little weight.[2] *E.g., Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.,* 618 F.3d 1153, 1168 (10th Cir.2010). Thus, this factor weighs in favor of transfer.

B.  *The Local Interest Favors Transfer Because This Case Involves A Dispute Over Species Located In Wyoming*

One of the most salient factors warranting transfer is the strong interest in "having localized controversies decided at home." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947)).  As I have previously stated, local interests in a dispute can be the "most influential" factor supporting transfer, even where a case raises an issue that is of national importance. *Friends of the Norbeck*, 2010 WL 4137500, at *4 (transferring case to South Dakota where, *inter alia*, the lands at issue were located in South Dakota, the State and its residents had a "unique stake" in the issue, the issue implicated State resources and management authority, and the State actively participated in the regulatory process).  Thus, even though Petitioners may be correct in asserting that the matter is of "national" interest because the Wyoming Rule may have spill-over effects in, for example, the

---

[2] Petitioners, of course, assert that the majority of operative facts occurred in Colorado. Their argument is based upon the Wyoming Rule's identification of the Service's Mountain-Prairie Regional Office in Lakewood, Colorado as primarily responsible for the final rule, the location to which all questions concerning the final rule should be directed, and the location of all administrative records supporting FWS's decision.  It is the State of Wyoming, however, that manages its gray wolf population, and the regulatory mechanisms giving rise to the Wyoming Rule were crafted and adopted by the Wyoming legislature and Governor. 77 Fed. Reg. at 55533-35.  Public hearings on the Wyoming Rule occurred in the State of Wyoming. Id. at 55543.

wolf population of Yellowstone National Park, the nub of Petitioners' claim still has strong local flavor due to the State's involvement in the regulatory process and its status as *situs* for the species. Moreover, the State's management of gray wolves therefore directly impacts the citizens of that State. *See, e.g.,* Compl. ¶¶ 45-46 (alleging ecological and economic benefits to Wyoming citizens from the wolves located in that State, and their management).

The Wyoming District is the district with the greatest connection to the citizens, animals, lands, resources, and environmental interests affected by the Wyoming Rule. In short, "suits such as this one, which involve . . . environmental regulation, and local wildlife – matters that are of great importance in the State of [Wyoming] ..should be resolved in [Wyoming]." *Trout Unlimited v. U.S. Dep't of Agric.,* 944 F. Supp. 13, 19 (D.D.C. 1996).

C. *The Wyoming Remand Order And That District's Familiarity With The Issues Support Transfer*

Although both districts are presumed to be equally familiar with federal law, *Friends of the Norbeck*, 2010 WL 4137500, at *4, the Wyoming District Court is familiar with the application of the law to many of the pertinent facts involved in this litigation.  The Wyoming District Court is familiar with both the issues presented and also a large portion of the administrative record and has developed an understanding of the lengthy administrative proceedings and the various statutory mandates that the Wyoming Rule implicates. *Wyoming v. U.S. Dep't of Interior*, 2010 WL 4814950, at *14-45.

Furthermore, the Wyoming Rule challenged in this action is the culmination of a remand ordered by the Wyoming District Court.  As such, having the remand order considered by a different court threatens to bring more confusion to an issue that has been mired by competing and inconsistent State, Federal, and judicial pronouncements relating to the

status of NRM gray wolves under the ESA. As the District of Wyoming court previously explained:

> Given the past history of the wolf project, both the state of Wyoming and the [Service] have been facing conflicting rulings and determinations, based on substantially the same scientific and commercial data -- a Catch–22 for all. The courts have done little to facilitate resolution of the issues and an understanding as to what is necessary to satisfy the requirements of the ESA's delisting provisions in the unique facts of this case.

*Wyoming*, 2010 WL 4814950, at *38. In this confused state of affairs, the interest of justice factor strongly counsels allowing the Wyoming District Court to adjudicate compliance with its own remand order.

### D. The State Law Claims Implicated by the Wyoming Rule Support Transfer

Although embedded in alleged ESA or NEPA violations, most of the claims in the Petition for Review are inextricably bound with issues requiring the interpretation and application of Wyoming law. Six of the seven Causes of Action in Petitioners' Petition for Review directly involve the interpretation or application of the State's wolf management statutes, administrative rules, or wolf management plan. (*See, e.g., Compl.* at ¶¶ 76, 85-88, 95-105, 109, 118-119, 122; *see also* ¶¶ 62-67, 69-71) The Wyoming district court is presumed to be the court that is most familiar with the interpretation and application of Wyoming law. *See, e.g., Trout Unltd. v. U. S. Dep't of Agric.*, 944 F. Supp. 13, 19 (D.D.C. 1996). Thus, the presence of these state law issues weighs in favor of transferring this case to the District of Wyoming.

### E. The Other Chrysler Factors are Neutral or Support Transfer

Throughout their opposition, Petitioners argue that litigating this matter in the District of Wyoming would be more inconvenient to Plaintiffs and should overcome every other compelling

reason to transfer this matter to the District of Wyoming. *See, e.g.,* Pls. Opp. at 6-9.  Plaintiffs overstate their perceived inconvenience.

First, because "the location and convenience of counsel is not a relevant factor" in my analysis, *Bailey v. Union Pacific R. Co.*, 364 F.Supp.2d 1227, 1230 (D.Colo.2005), I am unmoved by Petitioners' point that Guardians' in-house counsel, who represents all Plaintiffs in this action, maintains an office in the Denver area.  Although it is true here that counsel is also an employee of a party, and thus inconvenience to counsel equates to an inconvenience of the party, that is true only of one of the eight Petitioners.  In any event, another of the Petitioners, the Biodiversity Conservation Alliance, is based in Wyoming, so at best the factor results in a wash.

Second, this case is reviewed on the basis of the administrative record and is resolved without a trial.  Fed. Mem. at 21.  As such, a consideration of the convenience of witnesses is largely irrelevant. Although it is true that it can be helpful to counsel, and sometimes the court, to have factually knowledgeable people present in the courtroom during hearings in an administrative review case, the minor costs associated with travel from Colorado to Wyoming do not overcome the many factors compelling transfer.  Likewise, the incidental expenses and travel time counsel may incur from litigating in Wyoming are do not outweigh the factors backing transfer. *See WildEarth Guardians*, 2012 WL 1415378, at *4 (finding that incidental expenses in transferring case are "not substantial enough to indicate that transfer should not take place, especially when compared with the localized interest in having the case adjudicated in Wyoming").

Third, there is no question as to the enforceability of any potential judgment and there are no perceivable advantages or obstacles to Petitioners' obtaining a fair proceeding in Wyoming. As to the relative congestion of the dockets, I decline Respondents' invitation to reconsider the

conclusion I reached in April that there is no material difference between the Districts of Colorado and Wyoming when it comes to resolving the time of dispute at hand.

## CONCLUSION

For the foregoing reasons, Respondents have met their burden of establishing that considerations of convenience and the interests of justice strongly favor transfer to the District of Wyoming. Accordingly, Respondents' Motion to Transfer (Doc. 5) is GRANTED, and the case shall be transferred to the District of Wyoming.


DATED:       January 9, 2013                    BY THE COURT:
                                                /s/John L. Kane
                                                U.S. SENIOR DISTRICT JUDGE